Robert H. MORELEWICZ,
Plaintiff—Appellant,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,
Defendant—Appellee.

No. 04–56358.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 15, 2006 *.

Filed Nov. 17, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

824

Craig A. Miller, Levine, Steinberg & Miller, San Diego, CA, for Plaintiff–Appellant.

Charles A. Bird, Esq., Kathryn A. Bernert, Esq., Luce Forward Hamilton & Scripps, LLP, San Diego, CA, for Defendant–Appellee.

Before: D. NELSON, REINHARDT, and BYBEE, Circuit Judges.

## MEMORANDUM **

Robert Morelewicz appeals from the district court's order granting summary judgment to the Government Employees Insurance Company ("GEICO"). We affirm. Because the parties are familiar with the factual and procedural histories of this case, we need not recount them here.

We review a grant of summary judgment de novo, construing the evidence in a light most favorable to the nonmoving party. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir.2005). "A grant of summary judgment is appropriate only where the moving party has demonstrated that there is no genuine issue of material fact"—a fact that might reasonably affect the outcome of the suit in favor of the nonmoving party. *Id.* (citing *Lindsey v. Tacoma–Pierce County Health Dep't*, 195 F.3d 1065, 1068 (9th Cir.1999)).

To sustain a claim of wrongful discharge under California law, a plaintiff must first show that his discharge violated "a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." *Turner v. An-*

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

heuser–Busch, Inc., 7 Cal.4th 1238, 32 Cal. Rptr.2d 223, 876 P.2d 1022, 1032–33 (1994) (citations and footnotes omitted). Such claims "typically arise when an employer retaliates against an employee for (1) refusing to violate a statute ..., (2) performing a statutory obligation ..., (3) exercising a statutory right or privilege ..., or (4) reporting an alleged violation of a statute of public importance" (i.e. whistle-blowing).[1] Id. at 1033 (citation and internal quotation marks omitted). Second, the plaintiff must demonstrate a nexus between the reporting of a policy violation and the adverse action taken against him. Turner, 876 P.2d at 1034.

Morelewicz asserts that GEICO fired him because: (i) he complained that GEICO was violating Cal.Code Regs. tit. 10 §§ 2695.4, 2695.7(c)(1); (ii) he attempted to train adjusters to handle claims fairly in accordance with the "charter and purpose of Subchapter 7.5 of the Department of Insurance Regulations"; (iii) he advised claims associates that GEICO was incorrectly handling its grace periods under Arizona law; and (iv) he emailed out communications from the National Association of Independent Adjusters ("NAII").

Each of these allegations fails because either there were no applicable statutes governing the purportedly illegal conduct, Morelewicz did not have "reasonably based suspicions" that GEICO was engaged in illegal conduct, or Morelewicz did not actually complain or report a violation to GEICO.

**I.  Cal.Code Regs. tit. 10 § 2695.4 and § 2695.7(c)(1)**

Morelewicz first alleges that his termination was prompted by complaints about GEICO's failure "to inform insureds about coverage applicable to their claims" in violation of Cal.Code Regs. tit. 10 § 2695.4, and GEICO's failure to "send[ ] out 30 day coverage letters" in violation of Cal.Code Regs. tit. 10 § 2695.7(c)(1).

■ Assuming that these code sections implicate fundamental public policy, Morelewicz never reported their violation to GEICO with sufficient specificity. See Holmes v. General Dynamics Corp., 17 Cal.App.4th 1418, 1434, 22 Cal.Rptr.2d 172 (Cal.Ct.App.1993) ("[T]he employee must convey the information in a form which would reasonably alert his or her employer of the nature of the problem and the need to take corrective action." (emphasis added)).

Morelewicz points to a warning he gave to his supervisor to satisfy this element:

I specifically informed Assistant Vice President of Claims, Margi Rogers that GEICO's claims handlers and supervisors were not trained to perform their jobs adequately, in conformance with applicable legal regulations.

This statement was not adequate. Morelewicz did not disclose to GEICO that its employees were violating the activities required by Cal.Code Regs. tit. 10 § 2695.4 and § 2695.7(c)(1)—informing policyholders about coverage and sending out 30–day coverage letters. Moreover, his statement does not even reveal the jurisdiction whose regulations were being violated. This deficiency is particularly problematic, as Morelewicz was responsible for coverage decisions across a 10–state region.

■ Morelewicz alternatively contends that his campaign to arrange training sessions to educate claims personnel on these issues placed GEICO on notice. This ar-

---

1. In the last situation, the employee need not prove that the alleged improper conduct was actually unlawful, but that the employee had "reasonably based suspicions" of illegal activ-

ity. Green v. Ralee Eng'g Co., 19 Cal.4th 66, 78 Cal.Rptr.2d 16, 960 P.2d 1046, 1059 (1998) (citation omitted).

gument is without merit. Morelewicz's attempt to schedule training sessions does not, without additional context or explanation to GEICO, reasonably alert GEICO as to the purported statutory violations.

## II. The "Charter and Purpose" of Subchapter 7.5 of the Department of Insurance Regulations

Morelewicz next argues that GEICO's cancellation of his training sessions violated the "charter and purpose of Subchapter 7.5 of the Department of Insurance Regulations, which is designed 'to promote the good faith, prompt, efficient and equitable settlement of claims on a cost effective basis.'" *Cal.Code Regs.* tit. 10 § 2695.1(a)(2).

■ Two problems affect Morelewicz's argument. First, Morelewicz complaints relate to internal company policies and practices. That Morelewicz's training sessions were cancelled and that he was prevented from performing other intra-office tasks do not implicate fundamental public policies embodied in a statute. *See Turner,* 876 P.2d at 1033 ("The tort of wrongful discharge is not a vehicle for enforcement of an employer's internal policies. . . .").

■ Second, Morelewicz's quoted text is from a statutory preamble. The phrase "[t]o promote the good faith, prompt, efficient and equitable settlement of claims" is identified as an "objective" that the Insurance Commissioner shall consider before promulgating administrative regulations. *Cal.Code Regs.* tit. 10 § 2695.1(a).

A wrongful discharge claim must be grounded in fundamental policies "embodied in a statute or constitutional provision." *Turner,* 876 P.2d at 1033. Furthermore, that "constitutional or statutory provision must sufficiently describe the type of prohibited conduct to enable an employer to know the fundamental public policies that are expressed in that law." *Sequoia Ins.*

*Co. v. Superior Court,* 13 Cal.App.4th 1472, 1480, 16 Cal.Rptr.2d 888 (Cal.Ct.App. 1993).

*Sequoia Insurance* forecloses Morelewicz's citation to a statutory preamble. There, the plaintiff alleged that Sequoia—his former employer—was engaged in a "'scheme' to defeat the purposes of Proposition 103," and that he was fired after he protested. *Id.* at 1476, 16 Cal.Rptr.2d 888. The court rejected this theory, finding that the purpose language of the Proposition should not be confused with its procedures and could not support a wrongful termination tort. *Id.* at 1481, 16 Cal.Rptr.2d 888. Such "purpose" language did not place Sequoia on notice that its practices violated public policy. *Id.*

In the same vein, Morelewicz cannot cite to vague and aspirational language in the preamble to show a violation of statute that implicates fundamental public policy.

## III. Grace Periods under Arizona law

■ Morelewicz contends that his termination was also prompted by his department-wide email notice that GEICO was not complying with Arizona's statutory requirements for grace periods. He does not cite to a specific provision, but appears to refer to *Ariz.Rev.Stat.* § 20–1632.01(a) (providing that a "policyholder is entitled to a minimum grace period of seven days for the payment of any premium . . ., during which grace period the policy shall continue in full force").

Morelewicz fails to demonstrate how his complaints were grounded in "reasonably based suspicions of illegal activity." *Green,* 78 Cal.Rptr.2d 16, 960 P.2d at 1059 (Cal.1998) (citation omitted). Morelewicz sent his email after reviewing an audit discussing how GEICO had been "struggling" with various interpretations of the Arizona law on cancellation periods. Yet, at no point did the audit find GEICO in

violation of Arizona law. Rather, the audit details how GEICO was using longer grace periods than required and asks whether it would be appropriate to shorten the periods.

Morelewicz misunderstood both what Arizona law demanded of GEICO and how the company had responded to those demands. This may be explained by the fact that he had no responsibility for grace period policies—a task vested in GEICO's underwriting department. His suspicions about GEICO's illegal activity were objectively unreasonable, and cannot be deemed a protected act of whistle-blowing.

## IV. Communications from NAII

Morelewicz lastly asserts that "GEICO also refused to allow [him] to distribute literature from the NAII which was designed to ensure that GEICO handled insurance claims correctly."

■ Assuming the truth of his allegation, Morelewicz provides no authority to demonstrate that his distribution of NAII literature is a statutory right or privilege, or that GEICO would violate a state statute by restricting the dissemination of such materials. Accordingly, assuming Morelewicz had complained about those restrictions, no fundamental public policy embodied in a statute was implicated.

To the extent that Morelewicz relies on the NAII advisory regarding the collection of salvage information for a report to the California Department of Insurance, his argument fails. As the district court explained, Morelewicz cites to no state statute or regulation governing the salvage report, thereby negating his assertions that a fundamental public policy was violated. Moreover, there is no evidence that

Morelewicz complained to GEICO that it was violating the law, only that Morelewicz forwarded the advisory on to Frank Tate suggesting that he complete it. Finally, there is uncontradicted evidence in the record that the report was a one-time requirement by the Department of Insurance, and that it was properly completed by GEICO.

In sum, Morelewicz cannot demonstrate any genuine issue of material fact on whether he was fired for complaining that GEICO was violating a fundamental policy in a state statute or regulation.[2]

AFFIRMED.

---

2. As a result, we need not address the second element of a wrongful tort claim—whether there is a nexus between the plaintiff's reporting of a statutory violation and an adverse action taken by the defendant.

